**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BULLSEYE TELECOM, INC.,

      Plaintiff,

  v.                                                Case No. 2:19-cv-10812

CENTURYLINK COMMUNICATIONS, LLC,
LEVEL 3 COMMUNICATIONS, LLC,
GLOBAL CROSSING
TELECOMMUNICATIONS, INC. and
WILTEL COMMUNICATIONS LLC,

      Defendants.

## COMPLAINT

BullsEye Telecom, Inc. ("BullsEye"), by its undersigned counsel, for its Complaint against CenturyLink Communications, LLC, Level 3 Communications, LLC, Global Crossing Telecommunications, Inc. and WilTel Communications LLC ("Defendants"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action to recover over $802,989.00 in unpaid, unlawfully withheld compensation for interstate and intrastate telecommunications services that BullsEye has provided – and continues to provide – to Defendants since at least April of 2017. The compensation at issue is owed by Defendants pursuant to *inter alia* the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* (the "Act" or "Federal Communications Act"), and BullsEye's duly filed and effective federal and state tariffs for telecommunications services.

2. Plaintiff BullsEye is duly authorized in dozens of states to provide local telecommunications services to end-user customers. Carriers providing such services are referred to in the telecommunications industry as "local exchange carriers" or "LECs."

3. As a local exchange carrier, one of the standard services BullsEye provides is called "access service." Access services are used by interexchange carriers ("IXCs") to provide long-distance services. In simple terms, access services allow an IXC to connect telephone calls on its long-distance network to and from end-user customers by using a LEC's local telephone network.

4. Defendants are IXCs that have for many years used BullsEye's access services to send and receive their long-distance call traffic to and from BullsEye's local exchange customers in dozens of states. Defendants continue to use BullsEye's access services to serve Defendants' customers.

5. Where Defendants have ordered and/or constructively ordered BullsEye's access services, BullsEye has provided – and continues to provide – the telecommunications services (*e.g.*, switching, transport, and termination) that enable Defendants' long-distance calls to be completed. Without BullsEye's provision of these access services to Defendants, Defendants' customers would be unable to complete their long-distance calls.

6. BullsEye's interstate access services are governed by a tariff that BullsEye lawfully has on file with the Federal Communications Commission ("FCC") (the "Federal Tariff"). Similarly, BullsEye's intrastate access services are governed by tariffs, price lists or other documents or terms lawfully issued or posted pursuant to state law, regulation and/or other relevant authority in each state in which BullsEye provides local exchange service (collectively, the "State Tariffs"). The Federal Tariff and State Tariffs are collectively referred to herein as the "Tariffs."

7. Defendants are legally obligated to pay BullsEye for BullsEye's provision of access services at the rates and under the terms and conditions set forth in the BullsEye Tariffs.

8. BullsEye has for many years provided access services to Defendants and invoiced Defendants in accordance with the Tariffs. Defendants, however, have failed to remit payment to BullsEye for all of the access services provided, since at least April of 2017. BullsEye thus brings this action to recover the amounts owed by Defendants for the access services that BullsEye has provided – and continues to provide – plus all applicable late payment charges, costs and fees (including, without limitation, attorneys' fees and court costs).

## PARTIES

9. Plaintiff BullsEye Telecom, Inc. is a corporation organized under the laws of the State of Michigan and has its principal place of business in Southfield, Michigan.

10. On information and belief, Defendant CenturyLink Communications, LLC ("CenturyLink") is a limited liability corporation organized under the laws of the State of Delaware and has its principal place of business in Denver, Colorado.

11. On information and belief, Defendant Level 3 Communications, LLC ("Level 3") is a limited liability corporation organized under the laws of the State of Delaware and has its principal place of business in Broomfield, Colorado.

12. On information and belief, Defendant Global Crossing Telecommunications, Inc. ("Global Crossing") is a corporation organized under the laws of the State of Michigan and has its principal place of business in Broomfield, Colorado.

13. On information and belief, Defendant WilTel Communications, LLC ("WilTel") is a limited liability corporation organized under the laws of the State of Delaware and has its principal place of business in Broomfield, Colorado.

14. On information and belief, Defendants are all subsidiaries of the same parent corporation.

## JURISDICTION AND VENUE

15. This is an action to recover amounts due under, *inter alia*, BullsEye's Federal Tariff, which is duly filed with the FCC pursuant to the Federal Communications Act. Defendants' obligation to make payments to BullsEye under the Federal Tariff arises under federal law, including without limitation Sections 201 and 203 of the Act, 47 U.S.C. §§ 201, 203. BullsEye is authorized to seek recovery of such payments in the Court pursuant to its Federal Tariff and/or Section 207 of the Act, 47 U.S.C. § 207. Accordingly, the Court has federal question jurisdiction over BullsEye's cause of action brought under BullsEye's Federal Tariff pursuant to 28 U.S.C §§ 1331 and 1337. The Court likewise has federal question jurisdiction over BullsEye's cause of action for a declaratory judgment, to the extent the action concerns Defendants' compliance with the terms of the Federal Tariff and/or federal law. As BullsEye's state law claims are so related to and form part of the same case or controversy as BullsEye's federal claims, the Court has supplemental jurisdiction over BullsEye's state law claims pursuant to 28 U.S.C. § 1367.

16. The Court's federal question jurisdiction over actions for collection of charges under a federal tariff, such as this, has been confirmed in decisions such as *U.S. TelePacific Corp. v. Tel American of Salt Lake City, Inc.*, 19 FCC Rcd. 24552, 24555, ¶ 8 (2004), in which the FCC held that "[t]he proper forum for [an action for recovery of unpaid access charges that are allegedly due under the terms of a federal tariff] is the federal district court." *See also Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 FCC Rcd. 4826, 4835 n.58 (2005) (stating that "[t]he Commission has held that it does not act as a collection agent for carriers with respect to unpaid tariff charges") (citations omitted); *All American Tel. Co. v. AT&T*

*Corp.*, Memorandum Opinion and Order, 26 FCC Rcd. 723, at n.32 & ¶ 14 (2011), *pet. for recon. denied*, 28 FCC Rcd. 3469 (2013) (same and citing cases).

17. Venue is proper in this judicial district under 28 U.S.C. § 1391 as, *inter alia*, a substantial part of the events, acts and omissions giving rise to BullsEye's claims occurred within this District.

## IV. FACTUAL BACKGROUND

### A. *BullsEye's Access Services and Tariffed Charges*

18. Pursuant to federal law and regulation, all telecommunications carriers are required to interconnect their respective networks, either directly or indirectly, to permit the exchange of telecommunications traffic between carriers. Such interconnections make it feasible for customers of one carrier to call the customers of another carrier, and vice versa.

19. As a local exchange carrier, BullsEye provides the local landline connection from the interconnected telecommunications network to the premises of BullsEye's end-user customers. Thus, as noted above, BullsEye provides access services to IXCs, which allows IXCs to complete long-distance calls to and from end-users through the local landline connection provided by BullsEye.

20. IXCs such as Defendants obtain BullsEye's access services by ordering them, either actually (through submission of order requests) or constructively (through use of pre-existing network interconnections/access service facilities).

21. Access services are "interstate" if the points of origination and termination of the call are in two different states. Access services are "intrastate" if both points are within the same state. As noted above, BullsEye's interstate access services are governed by its Federal Tariff, while BullsEye's intrastate access services are governed by its respective State Tariffs.

22. BullsEye's Tariffs set forth the rates, terms and conditions, including the applicable charges, for BullsEye's access services. These terms and conditions include, among other things, the process and due dates for payment of BullsEye's charges.

23. Certain Tariffs impose late payment charges, fees and/or penalties (which are referred to herein as "late payment charges") on invoiced amounts not paid by the due dates established.

24. Certain Tariffs also impose obligations on customers, like Defendants, to reimburse BullsEye's attorneys' fees, costs and expenses (including without limitation court costs) that BullsEye incurs in collecting (either through litigation or otherwise) charges owed to BullsEye under its Tariffs.

## B. *Defendants' Failure to Pay BullsEye's Tariffed Charges*

25. Defendants are IXC customers of BullsEye's access services. Defendants ordered and used – and continue to order and use – BullsEye's interstate and intrastate access services to exchange calls between Defendants' respective long-distance networks and BullsEye's local telephone network.

26. Defendants' use of BullsEye's access services subjects Defendants to the terms and conditions of the BullsEye Tariffs, including without limitation the applicable access charges, payment deadlines, and late payment charges or penalties set forth in the Tariffs.

27. The Tariffs obligate Defendants to pay the full amount of access charges set forth in the Tariffs for the access services that Defendants use.

28. BullsEye timely rendered invoices to Defendants for their use of BullsEye's access services. These invoices assessed the charges set forth in BullsEye's Tariffs for the access services provided to Defendants by BullsEye.

29. Starting in approximately April of 2017, Defendants failed to pay certain of the access charges assessed to Defendants under BullsEye invoices issued in accordance with the Tariffs. The compensation owed BullsEye relates to charges for both interstate and intrastate access services.

30. Defendants disputed the access charges based solely on their assertion that the charges were assessed on over-the-top Voice-over Internet Protocol ("OTT VoIP") calls (that are delivered over an end-user's broadband connection as opposed to a traditional landline facility). Defendants asserted that OTT VoIP calls are not subject to certain access service rate elements applicable to traditional landline calls.

31. Critically, however, BullsEye does not assess access charges on OTT VoIP calls. BullsEye thus denied Defendants' invalid disputes and demanded payment of the charges owed. Defendants still failed and refused to remit payment.

32. By failing to remit payment of the access charges assessed by BullsEye pursuant to the Tariffs by the deadlines set forth therein, Defendants are obligated to pay BullsEye the applicable late payment charges or penalties set forth in the Tariffs, at amounts that continue to accrue over time until the access charges are paid.

### C. *Defendant CenturyLink's Abandonment of Informal Complaint at the FCC*

33. On or about September 28, 2017, Defendant CenturyLink filed an unsubstantiated informal complaint against BullsEye with the FCC's Enforcement Bureau, File No. EB-17-MDIC-0005, pursuant to FCC regulations found at 47 C.F.R. § 1.716 *et seq.* The informal complaint baselessly alleged that BullsEye had assessed certain access service rate elements on OTT VoIP calls that CenturyLink claimed were inapplicable to such calls.

34. On or about December 15, 2017, BullsEye filed a response to CenturyLink's informal complaint, which corrected critical facts and rebutted CenturyLink's allegations entirely. Among other things, BullsEye noted that it billed CenturyLink solely for access services provided over traditional landline facilities – and did not bill CenturyLink for access services for any OTT VoIP calls.

35. CenturyLink did not – and could not – dispute that the access charges at issue are duly owed where the access services are provided over traditional landline facilities. Indeed, CenturyLink previously paid such charges without dispute.

36. By letter dated April 30, 2018, the FCC Enforcement Bureau terminated its review of CenturyLink's informal complaint pursuant to 47 C.F.R. §§ 1.716-1.717. The FCC letter noted that "[b]ased on a review of the pertinent information, the Division does not seek any further submissions and will close the file."

37. The FCC letter advised CenturyLink that, to the extent CenturyLink is "unsatisfied with BullsEye's response and wish[es] to take further action, then CenturyLink may file a formal complaint regarding the same subject-matter by June 15, 2018 pursuant to 47 C.F.R. § 1.718." The letter further advised that if no formal complaint was filed by the deadline or any approved deadline extension, CenturyLink would "lose the benefit of relating the filing date of its formal complaint back to the filing date of the unsatisfied informal complaint."

38. The deadline for CenturyLink to file a formal complaint was extended by FCC staff on consent of the parties to November 7, 2018. CenturyLink never filed a formal complaint, fundamentally conceding the legitimacy of the charges CenturyLink and its co-Defendant affiliates continue to refuse to pay.

### D. *Defendants' Continued Failure to Pay for BullsEye's Access Services*

39. Defendants have never had, and do not now possess, any valid basis to withhold payment of the charges for access services billed by BullsEye pursuant to the Tariffs. Defendants have consistently used BullsEye's interstate and intrastate access services, and the associated access charges billed are properly due and owing.

40. As discussed above, the dispute raised by Defendants with respect to the unpaid access charges is invalid, and has now been waived by Defendant CenturyLink's abandonment of its informal complaint at the FCC and failure to timely file a formal complaint.

41. Defendants, however, have continued in their refusal to pay BullsEye over $802,989.00 in access charges and associated late payment charges. This amount does not include applicable interest, or other costs, expenses and fees (such as, without limitation, attorneys' fees and court costs). To the extent that BullsEye continues to provide access services to Defendants and Defendants continue in their failure to pay for same, the amounts owed to BullsEye continue to accrue.

42. Due to Defendants' failure to timely pay the access charges owed by the due dates established by the Tariffs, the Tariffs and/or applicable law obligate Defendants to pay late payment charges to BullsEye. Defendants have failed to pay these late payment charges.

43. Due to Defendants' withholding of amounts lawfully owed to BullsEye under the Tariffs, BullsEye has incurred attorneys' fees, court costs and other expenses. The Tariffs and/or applicable law obligate Defendants to reimburse BullsEye for the costs incurred in collecting the access charges owed (including without limitation attorneys' fees and court costs). Defendants have not reimbursed BullsEye for these costs.

## COUNT I:
## BREACH OF FEDERAL TARIFF

44. BullsEye incorporates by reference the allegations contained in paragraphs 1 through 43 of this Complaint as if set forth here in their entirety.

45. Defendants have failed to pay all access charges mandated by the Federal Tariff for interstate access services that Defendants ordered and/or used and that BullsEye provided.

46. Given that Defendants failed to pay the full amount of the access charges by the due dates established by the Federal Tariff, Defendants also owe late payment charges to BullsEye pursuant to the Federal Tariff.

47. Pursuant to the Federal Tariff and/or applicable law, Defendants are also obligated to reimburse BullsEye for the attorneys' fees, costs and expenses BullsEye incurs collecting the access charges Defendants failed to pay, including without limitation the attorneys' fees, costs and expenses incurred by BullsEye in this lawsuit.

48. Defendants are liable to BullsEye for all of the foregoing unpaid and unreimbursed amounts.

49. The Court should enter judgment in BullsEye's favor and against Defendants in an amount to be established through Court proceedings or trial.

## COUNT II:
## BREACH OF STATE TARIFFS

50. BullsEye incorporates by reference the allegations contained in paragraphs 1 through 49 of this Complaint as if set forth here in their entirety.

51. Defendants have failed to pay all access charges mandated by BullsEye's State Tariffs for intrastate access services that Defendants ordered and/or used and that BullsEye provided.

52. Given that Defendants failed to pay the full amount of the access charges by the due dates established by BullsEye's State Tariffs, Defendants also owe late payment charges to BullsEye pursuant to certain of the State Tariffs and/or applicable law.

53. Pursuant to the State Tariffs and/or applicable law, Defendants are also obligated to reimburse BullsEye for the attorneys' fees, costs and expenses BullsEye incurs collecting the access charges Defendants failed to pay, including without limitation the attorneys' fees, costs and expenses incurred by BullsEye in this lawsuit.

54. Defendants are liable to BullsEye for all of the foregoing unpaid and unreimbursed amounts.

55. The Court should enter judgment in BullsEye's favor and against Defendants in an amount to be established through Court proceedings or trial.

## COUNT III:
## UNJUST ENRICHMENT, QUANTUM MERUIT, AND
## BREACH OF IMPLIED-IN-LAW CONTRACT

56. BullsEye incorporates by reference the allegations contained in paragraphs 1 through 55 of this Complaint as if set forth here in their entirety.

57. This claim is alleged in the alternative to Counts I and II.

58. Since at least April of 2017 and continuing through the date of this Complaint, BullsEye provided valuable interstate and intrastate access services in good faith to Defendants with the expectation that Defendants would compensate BullsEye for providing such access services.

59. By routing interstate and intrastate calls to or from Defendants' long-distance networks from or to BullsEye's local telephone network, Defendants accepted, used and enjoyed

the access services that BullsEye provided. At the same time, Defendants knew that BullsEye expected Defendants to compensate BullsEye for providing such access services.

60. Defendants completed interstate and intrastate calls for Defendants' long-distance customers using the access services obtained from BullsEye. On information and belief, Defendants have received and continue to receive monetary revenue and/or non-monetary compensation from Defendants' long-distance customers for services that include completing these calls.

61. Defendants' receipt of such services and enrichment of revenue and/or compensation from Defendants' customers were obtained at the expense of BullsEye. Accordingly, by obtaining the benefit of the interstate and intrastate access services that BullsEye provided to Defendants and by not paying BullsEye for these services, Defendants have been unjustly enriched and have taken undue advantage of BullsEye.

62. The reasonable and fair market value of the access services for which Defendants have refused to pay equals at least $802,989.00.

63. It is against equity and good conscience to permit Defendants to reap the benefits of the access services provided by BullsEye and retain all the revenue and compensation from Defendants' customers without due compensation to BullsEye.

64. Defendants have been and will continue to be unjustly enriched unless Defendants are required to pay an amount equal to the reasonable and fair market value of the access services provided, as indicated above.

65. As a matter of equity, BullsEye is entitled to recover the reasonable amount set forth above, and such other damages, including without limitation the expenses, costs and

attorneys' fees that BullsEye incurs in relation to this claim and lawsuit along with late payment charges and prejudgment interest.

66. The Court should enter judgment in BullsEye's favor and against Defendants in an amount to be established through Court proceedings or trial.

## COUNT IV: DECLARATORY JUDGMENT

67. BullsEye incorporates by reference the allegations contained in paragraphs 1 through 66 of this Complaint as if set forth here in their entirety.

68. A substantial controversy exists between the parties that is immediate and real, as Defendants continue to unlawfully withhold access charges from BullsEye. Based on their refusal to pay these fees since at least April of 2017, Defendants are likely to continue to refuse to pay these access charges into the future.

69. The parties have adverse legal interests, as BullsEye maintains that Defendants owe these access charges, but Defendants continue in their refusal to pay said charges.

70. A judgment declaring that "Defendants are obligated in the future to pay all access charges established by BullsEye's Federal and State Tariffs, for all calls exchanged between Defendants' long-distance networks and BullsEye's local telephone network" will finalize this controversy between the parties and offer relief from the current, ongoing dispute.

71. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should enter a declaration that Defendants are obligated in the future to pay all access charges established by BullsEye's Federal and State Tariffs, for all calls exchanged between Defendants' long-distance network and BullsEye's local telephone network.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BullsEye prays that the Court enter judgment in favor of BullsEye Telecom, Inc., and against Defendants, awarding:

1. Damages in the form of a monetary award due to the failure and refusal of Defendants to pay the full amount of charges and associated late payment fees Defendants owe BullsEye pursuant to the Tariffs and other grounds set forth above (in an amount to be proven through Court proceedings or trial, but in no event less than $802,989.00);

2. Declaratory judgment, as requested above,

3. An award of costs, expenses and fees, including without limitation attorneys' fees (currently exceeding $66,500.00 and continuing to accrue), and court costs, as well as pre-judgment interest, to which BullsEye may be entitled, and

4. Such other relief to BullsEye that the Court determines to be just.

Dated:  March 19, 2019

*/s/ Brian D. Wassom*
WARNER NORCROSS + JUDD LLP

Brian D. Wassom (P60381)
James E. Romzek (P37929)
45000 River Ridge Dr., Ste. 300
Clinton Township, MI 48038
(248) 784-5199

Andrew M. Klein
Klein Law Group, PLLC
[Application for Bar Admission to be filed]
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
202-289-6955

*Attorneys for Plaintiff*
*BullsEye Telecom, Inc.*